UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MEDIA RESEARCH CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-2013 (ESH) |
| U.S. DEPARTMENT OF JUSTICE; THE SOLICITOR GENERAL OF THE UNITED STATES, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| JUDICIAL WATCH, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-0426(ESH) |
| U.S. DEPARTMENT OF JUSTICE; | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiffs Media Research Center ("MRC") and Judicial Watch, Inc. ("JW") have each filed separate actions against the U.S. Department of Justice ("DOJ") and the Office of the Solicitor General of the United States ("OSG") (collectively "DOJ") pursuant to the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. Plaintiffs seek documents related to involvement that former Solicitor General Elena Kagan ("S.G. Kagan") may have had in drafting or opposing legal challenges to the Patient Protection and Affordable Care Act ("PPACA") signed by President Obama on March 23, 2010. In response to plaintiffs' requests, DOJ produced a number of documents, but redacted others pursuant to various FOIA exemptions, and it also withheld others after determining they were not "agency records" subject to FOIA. Before the Court is

defendants' motion for summary judgment and plaintiffs' memoranda in opposition.  For the reasons stated herein, the Court will grant summary judgment.

## BACKGROUND

**I.     MRC FOIA REQUEST**

On May 25, 2010, CNSNews.com, a division of MRC, sent a FOIA request to DOJ seeking records of communications to or from S.G. Kagan, and notations of meetings she attended that pertained to three topics: (1) then-pending legislative health-care proposals; (2) legal challenges to the PPACA; and (3) recusal of S.G. Kagan from any particular case due to the possibility that she might be confirmed to a seat on a federal court that subsequently might hear such case.  (Compl. ¶ 6.)

In relevant part, MRC requested:

> Any communication to or from Solicitor General Elena Kagan and any record or notation of any meeting attended personally or electronically by Solicitor General Elena Kagan in which then-pending legislative health-care proposals were discussed";[1]
>
> Any communication to or from Solicitor General Elena Kagan and any record or notation of any meeting attended personally or electronically by Solicitor General Elena Kagan in which [any] legal challenge[] to the health-care reform bill signed by President Barack Obama was a topic; [and]
>
> Any communication to or from Solicitor General Elena Kagan and any record or notation of any meeting attended personally or electronically by Solicitor General Elena Kagan in which the question of whether Solicitor General Elena Kagan ought to recuse herself from involvement in any particular case in her role as solicitor general due to the prospect that it might later come before

---

[1] The May 25, 2010 request initially sought "[a]ny communication to or from Solicitor General Elena Kagan and any record or notation of any meeting attended personally or electronically by Solicitor General Elena Kagan in which the administration's health-care reform plan was a topic."  (Compl., Ex. 1.)  In response to a request to clarify the phrase "the administration's health-care reform plan," MRC sent a letter dated June 25, 2010, which provided the current and relevant language of the request.  (Compl., Ex. 4.)

>her were she to be confirmed to a seat on a federal court was discussed.[2]

In response to this request, DOJ searched the files of individuals at the OSG using the dates of S.G. Kagan's tenure in that position and identified approximately 1,400 pages of potentially responsive materials. (Def.'s Mot. for Summ. J., Ex. 3 ("Hall Decl.") ¶ 14.) DOJ reviewed these documents and found that 115 pages contained at least some responsive material. (*Id.* ¶ 14.) Of these, DOJ determined that only 86 pages were "agency records" covered by FOIA. (*Id*. ¶¶ 14-15.)

DOJ released 45 of the 86 responsive pages to MRC. (*Id*. ¶ 15.) Twenty pages were released in full and 25 pages were released with information redacted pursuant to FOIA Exemptions 2, 5, and 6. (*Id.* ¶¶ 15, 17-23.) The remaining 41 responsive pages--primarily emails between S.G. Kagan and others—were withheld in full based on DOJ's determination that the documents are not "agency records" and thus not subject to FOIA.[3] (Hall Decl. ¶¶ 14(b) & n.2.) DOJ further stated that, if the 41 withheld pages were determined to be agency records, they would be withheld pursuant to FOIA Exemption 5 as records protected by the deliberative process privilege. (Hall Decl. ¶¶ 19-21; Hall Decl., Ex. A ("*Vaughn* Index") at 11-19.)

## II. JW FOIA REQUEST

On June 9, 2010, plaintiff JW sent a FOIA request to DOJ seeking, in relevant part:

> 1. All records of communication, briefing materials, and/or legal opinions concerning the constitutionality of the Patient Protection and Affordable Care Act of March 23, 2010;

---

[2] In response to a request for clarification, MRC clarified that this third category did "not focus solely on cases concerning health-care legislation but literally on 'any particular case.'" (Compl., Ex. 4).

[3] As a matter of discretion, DOJ also released to MRC an additional 18 pages that do not contain information responsive to the FOIA request. (Hall Decl. ¶ 15.) Three of these pages were released in full and 15 were released with partial redactions. (*Id*.)

>   2. Any and all records of communications between the Office of the Solicitor General and any of the following entities concerning the constitutionality of the Patient Protection and Affordable Care Act:
>
>       a. The Executive Office of the President;
>       b. The Department of Justice Office of Legal Counsel;
>       c. The Office of Attorney General.

(JW Compl. ¶ 7.)

In response, JW received a letter acknowledging receipt of its request, but did not receive any further communication. On February 24, 2011, JW filed suit against DOJ. *Judicial Watch v. Department of Justice*, No. 11-cv-0426 (D.D.C.).

On March 15, 2011, DOJ produced to JW 24 of the pages that were initially produced to MRC and stated that these documents are responsive to both FOIA requests. Eleven of these pages were released in full and 13 pages contained redactions

## III. PROCEDURAL HISTORY

MRC and JW each filed suit against DOJ for failing to produce documents responsive to their FOIA requests. (MRC Compl. ¶¶ 10-13; JW Compl. ¶¶ 10, 24.)

On March 15, 2011, DOJ produced a number of documents to MRC and JW and an accompanying *Vaughn* index, which identifies withheld material by document number, type of document, author, recipient, subject/title, and date created. The *Vaughn* Index states the reason for withholding each document, the claimed FOIA exemption, and provides an explanation of how each claimed exemption applies to the withheld or redacted document. Following this production, DOJ filed a motion for summary judgment in the MRC case. In its motion, DOJ contends that its determination to withhold certain responsive documents and its application of FOIA exemptions were proper. Its motion is supported by a declaration by Valerie Hall, the Executive Officer and FOIA Officer of the OSG. (Hall Decl. ¶ 1.)

On April 4, 2011, DOJ moved to consolidate JW's suit with MRC's suit on the grounds that both cases concern FOIA requests for documents with the same subject matter that were created within the same period of time. (Def.'s Mot. for Consolidation, Dkt. No. 12.) This Court granted defendants' motion to consolidate on April 21, 2011, for the purpose of resolving issues common to both cases. (*See* Order, Dkt. No. 15.)[4]

In response to defendants' motion for summary judgment, MRC and JW both challenge the adequacy of the search for records responsive to their respective requests. (MRC Motion in Opp'n to Def.'s Mot. for Summ. J. ("MRC Opp'n") at 2-6; JW's Opp'n to Def.'s Mot. for Summ. J. ("JW Opp'n") at 4-6.) In addition, plaintiffs challenge different aspects of DOJ's production of responsive documents. MRC challenges DOJ's decision to withhold 41 pages of responsive documents after having determined that they are not "agency records." (MRC Opp'n at 3-9.) Both MRC and JW challenge DOJ's determination that portions of responsive documents are exempt from disclosure. (MRC Opp'n at 9-10; JW Opp'n at 4-5.) Specifically, JW challenges redactions in six documents that were made pursuant to FOIA Exemption 5 as "attorney work-product." (JW Opp'n at 4, 7-9.) MRC challenges DOJ's determination that, even if the 41 withheld pages are found to be agency records, they would be exempt from

---

[4]Initially, the MRC and JW cases were consolidated to resolve common issues. Following the completion of briefing on the issues currently before this Court, JW and DOJ submitted a joint scheduling report indicating that "the only possible issue for further litigation arising out of plaintiff Judicial Watch's FOIA request is the reasonableness of defendant's search." (Joint Report on Scheduling, *Judicial Watch v. Department of Justice*, No. 11-cv-0426 (D.D.C June 1, 2011), Dkt. No. 12). On July 1, 2011, JW indicated that it would not further challenge the adequacy of DOJ's search and that no additional dispositive briefing would be necessary. (Joint Meet and Confer Statement, *Judicial Watch v. Department of Justice*, No. 11-cv-0426 (D.D.C July 1, 2011), Dkt. No. 14.) Given that no other issues remain in JW's suit against DOJ, this Court's grant of summary judgment as to the instant claims will resolve both of the above-captioned cases.

disclosure pursuant to the "deliberative process" privilege under Exemption 5. (MRC's Opp'n at 9-10.)

## ANALYSIS

**I.   STANDARD OF REVIEW**

The Court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). "An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson*, 565 F.3d at 862 (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)); *see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

## II.   ADEQUACY OF SEARCH

Plaintiffs oppose summary judgment and argue that defendants have not conducted an adequate search for responsive documents.  (MRC Opp'n at 3-6; JW Opp'n at 5-6.)  Given the search procedures described in the Hall Declaration, the Court rejects this argument.

An agency from which information has been requested must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  Courts apply a "'reasonableness' test to determine the 'adequacy' of search methodology," *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), and require a reasonable and systematic approach to locating the requested documents." *Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 116 (D.D.C. 2007).  "The agency must demonstrate that it 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Fischer,* 596 F. Supp. 2d at 42 (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

In this case, DOJ properly relies upon a sufficiently detailed, non-conclusory declaration that demonstrates the adequacy of the search.  *See Weisberg*, 705 F.2d at 1351.  DOJ submitted a

declaration that describes the process by which the search was constructed and carried out, including the way in which the agency determined which files to search and which search terms to use. (Hall Decl. ¶¶ 10-15.) The declaration explains that DOJ first conducted an initial search of paper files, computer files, and email correspondence of individuals at the OSG who were likely to be part of responsive correspondence. (*Id*. ¶¶ 11-13.) It states that a second search was conducted after DOJ was unable to verify the rigor of the first search. The affidavit describes the search terms that the agency used to locate any responsive documents, including synonyms for terms in plaintiff MRC's request. (*Id.* ¶¶ 13-14.) This search process yielded 1,400 potentially responsive pages, which the agency reviewed and ultimately identified 115 responsive pages. (*Id*. ¶¶ 14-15.)

Plaintiffs contend that the search was inadequate because certain documents they believe must have been created have not been produced. In particular, plaintiffs note that DOJ has not produced or identified documents relating to (1) one meeting that S.G. Kagan mentioned attending[5] and (2) the Attorney General's morning meetings, which S.G. Kagan indicated that she attended in the "first three or so months of 2010." (MRC Opp'n at 4-6; *id*., Ex. 1 at 2.) Plaintiffs' argument, that the topics within the FOIA request must have been discussed at these meetings and that records related to this must have exist, is simply conjecture and is therefore

---

[5] Although MRC maintains that this is evidence that S.G. Kagan attended meetings where the topics within the FOIA request were likely discussed and that, therefore, records must have been created, S.G. Kagan's full response when asked about this meeting just as easily disproves MRC's assertion. *See Responses to Supplemental Questions from Senators Jeff Sessions, Orrin Hatch, Charles Grassley, Jon Kyl, Lindsey Graham, John Cornyn, and Tom Coburn*, http://www.cnsnews.com/sites/default/files/documents/KAGAN%20RESPONSES%20FOR%20THE%20RECORD%20FOR%20SENATE%20JUDICIARY%20COMMITTEE.pdf ("Were you ever present at a meeting in which State of Florida v. U.S. Department of Health and Human Services, No. 3:10cv91/RV/EMT (N.D. Fla. Filed Mar. 23, 2010) was discussed?" reads: "I attended at least one meeting where the existence of the litigation was briefly mentioned, but none where any substantive discussion of the litigation occurred.").

insufficient to justify a finding that the search was inadequate. *Concepcion v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009) ("[S]peculation as to the existence of additional records . . . does not render the searches inadequate.); *see also SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."); *Oglesby*, 920 F.2d at 67 n.13 (rejecting "hypothetical assertions").

Plaintiffs also challenge the adequacy of the search because DOJ did not search the files of the Attorney General. (MRC Opp'n at 3- 6; JW Opp'n at 4-6.) JW argues that the search was not adequate because OSG determined to search the files and email of S.G. Kagan, her confidential assistant, and then-Principal Deputy Solicitor General Katyal, but did not search the records of the other deputies in the OSG. (JW Opp'n at 6.) However, this does not render the search inadequate where, as here, DOJ has demonstrated that its decision to search the files of these three individuals was reasonably calculated to uncover relevant documents. (Hall Decl. ¶¶ 13(d)-(e), 14 (concluding that, if records documenting meetings or other discussions of PPACA or legal challenges to PPACA exist, they would be located by the broad search terms, designed to capture any discussion of health care legislation generally, the PPACA, or related legal challenges, whether in the context of an "Attorney General's morning meeting" or otherwise, if S.G. Kagan participated); Def.'s Reply at 8 n.8.) *See also Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) (finding a search adequate when agency searched only "the office to which the request was sent or any office(s) named in the request" and refusing to find that the agency was required to "speculate about potential leads").

Moreover, even if such a record were to exist, an agency's search is not presumed unreasonable because it fails to find every potentially responsive document. *See Steinberg v.*

*United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (explaining that the question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate"). The agency need only demonstrate "that its search was reasonably calculated to uncover all relevant documents." *The Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotation marks and citation omitted).

Finally, plaintiffs argue that the search was inadequate because DOJ did not use certain search terms ("Attorney General" or "morning meeting"). (MRC Opp'n at 6; JW Opp'n at 4-6.) However, plaintiffs' FOIA requests did not "set forth a discrete list of search terms, and even if [either plaintiff] had included such a list, there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request." *Physicians for Human Rights v. U.S. Dep't of Defense*, 675 F. Supp. 2d 149, 163-64 (D.D.C. 2009); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch."). Here, "there is no basis to doubt that [DOJ] properly exercised [its] discretion in crafting [a] list[] of search terms that [it] believed to be reasonably tailored to uncover documents responsive to the FOIA request." *Am. Fed'n of Gov't Employees, Local 812 v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 151 n.11 (D.D.C. 2010) (internal quotations and citations omitted). Ultimately, JW's argument fails "because it presumes incorrectly that a search term is inadequate merely because it did not lead to the discovery of documents; another possibility, of course, is that the searched files contained no responsive documents." *Id*. at 151.

Here, DOJ has demonstrated that the search was reasonably calculated to uncover relevant materials. Therefore, this Court finds it adequate under FOIA.

### III. AGENCY RECORDS

MRC also contests DOJ's decision to withhold documents 105-113 after determining that they are not "agency records." (MRC Opp'n at 7-8.)

In order for a document to be subject to FOIA disclosure, it must be an "agency record." *See* 5 U.S.C. § 552(a)(4)(B). FOIA does not define this term either in the statute's text or in its legislative history. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). "[D]ocuments qualify as 'agency records' subject to FOIA disclosure if they are (1) created or obtained by an agency, and (2) in the agency's control." *United We Stand America, Inc. v. I.R.S.*, 359 F.3d 595, 598 (D.C. Cir. 2004) (citing *Tax Analysts*). An agency has requisite "control" over a document sufficient to render it an "agency record" under FOIA if it came "into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145.

The records at issue are documents 105-113, which are communications created or received by S.G. Kagan in her capacity as a judicial nominee for the U.S. Supreme Court. (*Vaughn* Index at 11-19.) Documents 105-112 are email exchanges between S.G. Kagan and staff members of the Executive Office of the President. (*Id*. at 11-18.) Document 113 is an email between S.G. Kagan and her confidential assistant consisting of a draft version of a response to the Senate's Judicial Nomination Questionnaire. (*Id*. at 19.) DOJ contends that these documents do not meet the *Tax Analyst* test because they were "not created or received by the Department in the performance of its functions[] and are not in its control and possession in the legitimate conduct of its official duties." (Mot. for Summ. J. at 2, 24-28). Therefore, according to DOJ, the documents are not subject to FOIA. In response, MRC argues that the

withheld documents are agency records because they were "created by the OSG, through the Solicitor General's use of the OSG email system." (MRC Opp'n at 7-8.)

The D.C. Circuit has explained that "in cases … where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA." *Bureau of Nat'l Affairs v. U.S. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984). Whether the individual's creation of a documents can be attributed to the agency depends on "the purpose for which the document was created, the actual use of the document, and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency." *Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (quoting *Bureau of Nat'l Affairs*, 742 F.3d at 1493); *see also Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927-28 (D.C. Cir. 2011). *Gallant* similarly involved a request for a government official's personal correspondence related to her own renomination as an agency boardmember. *Gallant*, 26 F.3d 168. As in *Gallant*, the records here were stored with the agency and agency personnel were nominally involved. However, S.G. Kagan's correspondence was not relied upon by the OSG in carrying out its business, but rather was used for a purely personal objective, which proved dispositive in *Gallant*.[6] As such, the relevant factors compel the conclusion that the withheld documents were personal, not attributable to the agency, and therefore were not "agency records." *Gallant*, 26 F. 3d at 172.

---

[6] *See id*. at 172 n. 2 ("While the [agency] may have benefitted … the mere fact that the document in question 'relates to' the business of the agency does not by itself render it an agency record.") (citation omitted).

**IV.     EXEMPTION 5**

Plaintiff JW contests DOJ's reliance on Exemption 5 as a basis for redacting and withholding a limited number of documents.[7] Specifically, JW argues that DOJ has improperly invoked the attorney work-product privilege of Exemption 5 to justify redacting six pages (documents 3-6, 70-71).  (JW Opp'n at 6-9.)

FOIA Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552 (b)(5).  "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see NLRB v. Sears*, 421 U.S. 132, 154 (1975).  Among the privileges incorporated by FOIA Exemption 5 are the "deliberative process" privilege and the "attorney work-product" privilege.  *Klamath*, 532 U.S. at 8.  The attorney work-product privilege protects materials not normally discoverable and "enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them at leisure."  *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126 (D.C. Cir. 1987) (internal citations omitted).  "The privilege is, however, limited to documents prepared in anticipation of litigation."  *Id*.

---

[7] MRC challenges DOJ's claim that, if documents 105-113 are considered to be agency records, they are protected from disclosure by the deliberative process privilege under Exemption 5. (MRC Opp'n at 9-10.)  However, because this Court finds that these documents are not agency records, it need not address whether the agency has properly invoked Exemption 5 as to these documents.

13

JW makes different arguments as to why this privilege should not apply to documents 3-6 and documents 70-71. (JW Opp'n at 6-9.)

Documents 3-6 are, as JW concedes, partially redacted emails discussing specific, imminent litigation by the Legal Landmark Foundation. (*Vaughn* Index at 1; JW Opp'n at 8-9.) JW argues that it is not clear how the very small amount of information redacted could reveal DOJ's preparation and strategy and seeks either disclosure of the information or additional justification for invoking Exemption 5. (JW Opp'n at 9.) JW does not offer, nor is this Court aware of, any precedent to support this argument.[8] Accordingly, this Court finds no basis for compelling the disclosure of the redacted material on documents 3-6.

Documents 70 and 71 are partially redacted e-mails from January 13, 2010, in which the subject of possible litigation related to the health care reform legislation was discussed. (*See* Hall Decl. ¶ 21; *Vaughn* Index at 9 (identifying redactions and explaining that exempted material covers attorneys' thoughts on legal issues, arguments, and strategies for anticipated or ongoing litigation).) JW argues that redacting these documents, pursuant to the attorney work-product privilege, was improper because DOJ "could not have been aware of any *specific* litigation related to the Act at the time Documents 70 and 71 were created since the legislation itself was still far from passage." (JW Opp'n at 9.)

JW's argument fails as a matter of law. A specific claim is not in fact essential for an agency to properly invoke the attorney work-product privilege. *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998). Rather, when government attorneys act as "legal advisors" to an agency considering litigation that may arise from challenge to a government program, a specific claim is

---

[8] Contrary to the implication in JW's opposition (JW Opp'n at 9), *Coastal States Gas Corp.,v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), provides no authority for this argument.

14

not required to justify the assertion of this privilege. *Id*. at 885; *Delaney*, 826 F.2d at 126-28. In such a situation, the privilege may be invoked if the agency documents were prepared "because of the prospect of litigation" and by attorneys who "subjective[ly] belie[ved] that litigation was a real possibility, and that belief [was] objectively reasonable." *In re Sealed Case*, 146 F.3d at 884.

In this case, DOJ has explained—and the unredacted material makes clear— that the emails, including the redacted material, discussed legal defense of the forthcoming health care legislation in response to an anticipated court challenge. (*Vaughn* Index at 9; Hall Decl., Ex. B (Bates 70, 71) (discussing defense strategies for anticipated legal challenges and noting the prospect of imminent litigation relating to the pending health care legislation).) This is precisely the type of communication that is protected by the attorney work-product privilege. *Delaney*, 826 F.2d at 126-28 (finding the attorney work-product privilege properly applied to memoranda that "advise[d] the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome"). Therefore, this Court is persuaded that Exemption 5 was properly applied to the redacted portions of documents 70 and 71.

## CONCLUSION

Having considered the pleadings and the entire record herein, and for the foregoing reasons, the Court rejects plaintiffs' challenges to defendants' response to their FOIA requests and grants DOJ's motion for summary judgment. A separate order accompanies this Memorandum Opinion.

                                                  /s/
                                    ELLEN SEGAL HUVELLE
                                    United States District Judge

Date:   October 13, 2011